UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EARNEST SCOTT, JR.,<br><br>        Plaintiff<br><br>    v.<br><br>PENNSYLVANIA DEPARTMENT OF CORRECTIONS, *et al.*<br><br>        Defendants. | CIVIL ACTION NO. 3:24-CV-00335<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Presently before the Court is *pro se* Plaintiff Earnest Scott, Jr.'s ("Scott") response to its April 2, 2024 Order to Show Cause detailing the imminent danger he faces if his complaint is not allowed to proceed *in forma pauperis*. (Doc. 11.) Because Scott has pled that he is in imminent danger of further health complications should his diabetes not be accommodated, the Court will allow him to proceed *in forma pauperis* in this action. Additionally, the Court will screen his complaint pursuant to 28 U.S.C. § 1915(e) and dismiss some of the claims he brings under the Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA"). The Court will grant Scott an opportunity to amend his complaint prior to serving the remaining parties associated with the surviving claims.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

On February 27, 2024, the Court received and docketed a complaint from Scott, an inmate at the State Correctional Institution in Huntingdon, Pennsylvania ("SCI-Huntingdon") against twenty-nine defendants, pursuant to 42 U.S.C. § 1983. (Doc. 1). Scott filed an uncertified motion to proceed *in forma pauperis* on February 29, 2024. (Doc. 4). Following an Administrative Order requiring a filing fee or a certified motion to proceed *in*

*forma pauperis*, Scott filed a certified motion to proceed *in forma pauperis* on March 7, 2024. (Doc. 7).

On April 2, 2024, the Court entered an order to show cause detailing Scott's prior filings with the Eastern and Western Districts of Pennsylvania and the Prison Litigation Reform Act's ("PLRA") "three strikes" rule. (Doc. 9). The Court found that an electronic search of his publicly available court records on PACER demonstrated that Scott had accumulated "three strikes" within the meaning of 28 U.S.C. § 1915(g).[1] (Doc. 9).

The statutory text of the "three strikes rule" provides that:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Therefore, the Court gave Scott an opportunity to show cause as to why he had not accumulated "three strikes" or demonstrate that he was under imminent danger of serious physical injury. (Doc. 9).

On April 15, 2024, the Court received and docketed Scott's response and accompanying documents. (Doc. 11.) Scott does not challenge the three-strikes assessed

---

[1] The three strikes include: *Scott v. Robinson*, No. 2:18-cv-02115-TJS, ECF No. 8 (E.D. Pa. Jun. 20, 2018) (dismissed with prejudice "pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim"); *Scott v. Close*, No. 3:21-cv-00046-SLH-KAP, ECF No. 47 (W.D. Pa Apr. 21, 2022) (adopting a report and recommendation to dismiss the amended complaint with prejudice as "insufficient to state a claim of deliberate indifference"); *Scott v. Mooney*, No. 3:21-cv-00116-SLH-KAP, ECF No. 24 (W.D. Pa. May 5, 2022) (adopting a report and recommendation to dismiss the complaint because "Plaintiff has failed to state a claim upon which relief can be granted").

against him, but alleges that he is facing imminent harm of serious physical injury. (Doc. 11). The Court will now address Scott's response and screen his complaint.

## II.   MOTION TO PROCEED *IN FORMA PAUPERIS*

Scott alleges that he faces imminent danger of serious physical injury. (Doc. 11). "[A] prisoner may invoke the 'imminent danger' exception only to seek relief from a danger which is 'imminent' at the time the complaint is filed." *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 312 (3rd Cir. 2001). Someone whose danger has passed cannot reasonably be described to be in imminent danger. *Abdul-Akbar*, 239 F.3d at 313. Furthermore, to invoke this exception to the three-strikes rule, a prisoner must make specific and credible allegations as to the imminent danger. *See Ball v. Famiglio*, 726 F.3d 448, 470 (3d Cir. 2013).

Here, Scott alleges that his Type 1 Diabetes being unaccommodated at the SCI-Huntingdon can result in severe physical harm, including loss of vision, loss of limbs, and diabetic ketoacidosis. (Doc. 11, at 2.) Therefore, the court will grant his motion to proceed *in forma pauperis* and screen his complaint pursuant to 28 U.S.C. § 1915(e).

## III.   28 U.S.C. § 1915A SCREENING

Under 28 U.S.C. § 1915A, the Court is obligated, prior to service of process, to screen a civil complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007) (not precedential). The Court must dismiss the complaint if it fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915A(b)(1); *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2). In this case, because Scott is a prisoner suing a governmental employee and brings his suit *in forma pauperis*, both

3

provisions apply. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell*, 696 F. Supp. 2d at 471; *Banks v. Cty. of Allegheny*, 568 F. Supp. 2d 579, 588 (W.D. Pa. 2008).

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To assess the sufficiency of a complaint on a Rule 12(b)(6) motion, a court must first take note of the elements a plaintiff must plead to state a claim, then identify mere conclusions which are not entitled to the assumption of truth, and finally determine whether the complaint's factual allegations, taken as true, could plausibly satisfy the elements of the legal claim. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011). In deciding a Rule 12(b)(6) motion, the court may consider the facts alleged on the face of the amended complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

After recognizing the required elements which make up the legal claim, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The plaintiff must provide some factual ground for relief, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[T]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, courts "need not credit a complaint's 'bald assertions' or 'legal

4

conclusions' . . . ." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1429-30 (3d Cir. 1997)). Nor need the court assume that a plaintiff can prove facts that the plaintiff has not alleged. *Associated Gen. Contractors of Cal. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983).

A court must then determine whether the well-pleaded factual allegations give rise to a plausible claim for relief. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Palakovic v. Wetzel*, 854 F.3d 209, 219-20 (3d Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678) (internal quotation marks omitted); *see also Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010). The court must accept as true all allegations in the amended complaint, and any reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). The plausibility determination is context-specific and does not impose a heightened pleading requirement. *Schuchardt*, 839 F.3d at 347.

Additionally, Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a well-pleaded complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action. There is no requirement that the pleading be specific or probable. *Schuchardt*, 839 F.3d

5

at 347 (citing *Phillips v. County of Allegheny*, 515 F.3d at 224, 233-234 (3d Cir. 2008). Rule 8(a) requires a "showing that 'the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *see also Phillips*, 515 F.3d at 233 (citing *Iqbal*, 550 U.S. at 545).

With the aforementioned standards in mind, a document filed *pro se* is "to be liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A *pro se* complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). Further, the Third Circuit has instructed that if a complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

**IV. DISCUSSION**

In his complaint, Scott raises claims under the ADA, RA, the Eighth Amendment, the First Amendment, and the Fourteenth Amendment. The Court will focus on the ADA and RA claims, which fail to state a claim, and provide Scott and opportunity to cure his defective pleadings.

Scott raises an ADA claim against the Pennsylvania Department of Corrections ("DOC") and seventeen individuals premised on two alleged disabilities: (1) mental health disorders and (2) Type 1 Diabetes. (Doc. 1). He also refers to a violation of the RA. (Doc. 1, at 7-8). Under Title II of the ADA, "no qualified individual with a disability shall, by reason

of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a claim under Title II of the ADA, a plaintiff must allege that: "(1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *McPherson v. County of Dauphin*, No. 19-1865, 2020 WL 1558206, at *2 (M.D. Pa. Mar. 24, 2020). The RA requires the same showing but applies only to "any program or activity receiving Federal financial assistance" and requires a plaintiff to demonstrate that their disability was the sole reason for the discrimination, not merely one reason. 29 U.S.C. § 794(a); *CG v. Pa. Dep't Educ.*, 734 F.3d 229, 235–36 (3d Cir. 2013).

"[D]ecisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez v. Prime Care Health, Inc.*, No. 19-CV-859, 2019WL1400466, at*1n.3 (E.D. Pa. Mar. 27, 2019) (collecting cases). These claims would inevitably fail because the ADA and RA "prohibit[ ] disability-based discrimination, 'not inadequate treatment for the disability.'" *Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156, 159 (3d Cir. 2016) (quotation omitted). However, a plaintiff may demonstrate a cognizable claim under the ADA and the RA if they allege a disabled detainee was denied a reasonable accommodation that would have granted them meaningful access to prison activities and programs, including those that implicate medical care. *McDonald-Witherspoon v. City of Philadelphia*, 481 F. Supp. 3d 424, 439 (E.D. Pa. 2020), *aff'd*, No. 21-1019, 2021 WL 6101246 (3d Cir. Dec. 21, 2021).

A.  INDIVIDUAL LIABILITY

While Scott clearly brings his ADA and RA claims against the DOC, he also appears to bring the same ADA and RA claims against seventeen individual defendants: (1) Laurel R. Harry, (2) John Rivello, (3) John Kohler, (4) Jill Spyker, (5) W. House, (6) Christina Loy, (7) Micheal Strait, (8) Michelle Ivicie, (9) Scott Klinefetter, (10) Sean McCorkle, (11) Jon Altemus, (12) Erica Benning, (13) Tiffany Frackler, (14) Erin Brown, (15) Sean Bresnahan, (16) Jessica Cousins, and (17) Robert Gimble.

The Court acknowledges that the Third Circuit has not directly answered the question of whether there can be individual liability under Title II. *See Brown v. Deparlos*, 492 F. App'x 211, 215 n.2 (3d Cir. 2012) (nonprecedential) ("This Court has yet to address individual liability under Title II of the ADA[.]"). However, nearly all of the Third Circuit's decisions regarding personal liability under the majority of ADA's other titles point toward the absence of individual liability. *See Kokinda*, 779 F. App'x at 942 (nonprecedential) (finding that plaintiff's claims "for individual damages liability under Title II of the ADA fail for the simple reason that there is no such liability"); *see also Williams v. Pa. Human Relations Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (holding that Title VII and ADA claims cannot be brought through a "back door to the federal courthouse" via 42 U.S.C. § 1983, and noting that Title VII and ADA claims are intended to impose liability on employers, not individuals); *Fasano v. Fed. Reserve Bank of N.Y.*, 457 F.3d 274, 289 (3d Cir. 2006) (noting in dicta that "neither the ADA nor 12 U.S.C. § 1831j permit individual damages liability on the part of employees"); *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting in dicta that "there appears to be no individual liability for damages under Title I of the ADA"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (finding that individual defendants did not own, lease, or

8

operate Thiel College and thus were "not subject to individual liability under Title III of the ADA"); *N'Jai v. Floyd*, 386 F. App'x 141, 144 (3d Cir. 2010) (nonprecedential) (noting individual defendant could not be held liable under ADA); *Wardlaw v. Phila. Street's Dep't*, 378 F. App'x 222, 225 (3d Cir. 2010) (nonprecedential) (explaining that plaintiff's ADA claims "were not actionable against the individual defendants"). Additionally, other circuit courts of appeals have found no individual liability under Title II. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001); *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (*en banc*).

In contrast, the Third Circuit has made a clear finding that individual defendants are not liable under the Rehabilitation Act. *Emerson*, 296 F.3d at 189. The Court will follow the Third Circuit's trend and dismiss all ADA and RA claims against individuals with prejudice.

B. STATUS CHANGE CLAIMS

Unlike the seventeen individuals identified above, the DOC is a public entity that can be held liable under the ADA and RA.[2] *See Pennsylvania Department of Corrections v. Yeskey*, 524 U.S. 206, 208-13 (1998). First, Scott alleges that the DOC converted his D-code status to a C-code status without the required inter-active process, and the conversion was in retaliation for filing lawsuits and grievances while housed at SCI-Huntingdon. (Doc. 1, at 7-8, 10). Later on in the complaint, Scott also alleges the conversion was discrimination based on his disability. (Doc. 1, at 15). Therefore, the element of an ADA and RA claim at issue in the complaint is causation.

---

[2] Liability under the RA is also contingent on the DOC receiving Federal financial assistance under the 29 U.S.C. § 794(a). However, because the Court finds no liability under the RA based on other grounds, the Court will not address this requirement at this time.

While the existence of an alternative cause may not be fatal to an ADA claim, the causation requirement of the RA requires disability to be the sole cause of discrimination. *CG v. Pennsylvania Dept. of Educ.*, 734 F.3d 229, 236-37 (3d Cir. 2013). Therefore, the RA claim against the DOC based on the change in the status will be dismissed without prejudice and the ADA claim will survive screening.

### C. DIABETIC ACCOMMODATIONS CLAIMS

Turning to Scott's alleged disability based on Type 1 Diabetes and the denied accommodations, the Court highlights that the requested accommodations are akin to medical treatment and not accommodations under the ADA. Scott alleges that his request to be accommodated with three to four times a day insulin and blood sugar checks and two 500 calorie snack bags a day were denied. (Doc. 1, at 9). He also alleges that these accommodations are necessary to avoid continued increase in his diabetic symptoms. (Doc. 1, at 9). However, "decisions about a prisoner's medical treatment generally do not give rise to a claim under the ADA." *Nunez,* 2019 WL 1400466, at *1 n.3. Medically required diets and routine blood sugar checks are akin to medical treatment and not evidence of discrimination. Therefore, the ADA and RA claims raised against the DOC based on the denial of his requested accommodations for additional snacks and routine blood sugar checks will be dismissed without prejudice.

### V. CONCLUSION

The Court will grant the motions to proceed *in forma pauperis* (Doc. 4; Doc. 7) and file the complaint (Doc. 1). The court will dismiss all ADA and RA claims against individuals, all RA claims raised in the complaint, and the ADA claim raised against the DOC for not accommodating his diabetic diet and blood sugar testing. The Court will afford Scott the

opportunity to amend the complaint prior to service on the remaining parties. Should Scott fail to timely amend the complaint, the case will proceed solely on the remaining claims.

An appropriate Order shall issue.

**Dated: May 1, 2024**                                                       *s/ Karoline Mehalchick*
                                                                             **KAROLINE MEHALCHICK**
                                                                             **United States District Judge**